# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

South Carolina Public Interest Foundation, Amy Hill, and Rebecca Bonnette, Individually, and on behalf of all others similarly situated, Appellants,

v.

Calhoun County Council, Respondent.

Appellate Case No. 2019-001016

―――――――――

Appeal from Calhoun County
Brian M. Gibbons, Circuit Court Judge

―――――――――

Opinion No. 28008
Heard October 15, 2020 – Filed February 10, 2021

―――――――――

**AFFIRMED**

―――――――――

James G. Carpenter, of Carpenter Law Firm, PC, of Greenville, for Appellants.

Charles Douglas Rhodes, III, Michael Wade Allen, Jr., and R. Patrick Flynn, all of Pope Flynn, of Columbia;  Robert E. Tyson, Jr. and Benjamin Rogers Gooding, both of Robinson Gray Stepp & Laffitte, LLC, of Columbia, all for Respondent.

Joshua C. Rhodes, General Counsel, and John K. DeLoache, Senior Staff Attorney, both of South Carolina Association of Counties, of Columbia, for Amicus Curiae South Carolina Association of Counties.

**JUSTICE HEARN:** This case concerns the scope of the thirty-day limitations period set forth in Section 4-10-330(F) under the Capital Project Sales Tax Act ("the Act"). S.C. Code Ann. §§ 4-10-300 to -390 (2019). Voters in Calhoun County approved a referendum in the November 2018 general election imposing a one percent sales and use tax—a penny tax—to fund a list of fifteen projects. Nearly five months later, Appellants filed suit, contending four of the projects were not authorized pursuant to section 4-10-330. The County responded that the statute of limitations had expired, and alternatively, the projects fell within the scope of the Act. The circuit court found the thirty-day limitations period barred the action and did not address the merits. We affirm, holding the statute of limitations has run.

## FACTS

During the November 2018 general election, the voters of Calhoun County, by a margin of 57% to 43%, approved a referendum imposing a penny tax to fund fifteen projects. These proposed projects ranged from the construction of water distribution lines, to fire stations, to dredging and beautification of recreational and fishing facilities. At issue in this appeal are the following four projects:

4.  Calhoun County-Sandy Run Fire District Ladder Truck Project-to include the acquisition and equipping of a new ladder truck in the Sandy Run Fire District. To support the northern portion of Calhoun County, particularly industry located therein. $350,000

11. Calhoun County Emergency Communications Project-to include the constructing, acquiring, and equipping of facilities and equipment to provide 800 MHz radio service for emergency service providers in Calhoun County. $500,000

12. Calhoun County Ambulance Project-to include the acquisition and equipping of ambulances to be operated by Calhoun County Emergency Services Department. $165,000

13. Calhoun County Sandy Run Fire District Tanker Truck Project-to include the purchase of the fire truck to serve the Sandy Run area. $267,000

On November 26, 2018, the County adopted a resolution declaring the results of the referendum. More than four months later, on April 3, 2019, the Foundation filed a declaratory judgment action seeking an order that the four projects exceeded the scope of the Act and therefore were invalid, and to enjoin the collection of the penny tax. The tax collection began May 1, 2019. Thereafter, the parties filed cross-motions for summary judgment, and the circuit court held a hearing. The Foundation contended penny tax proceeds could not be used for the four projects because none of them was specifically included in the Act. The County disagreed, arguing for a more expansive reading of the statute. The County also noted the Act expressly contains a thirty-day statute of limitations. In response, the Foundation argued the limitations period only applies to procedural challenges alleging election irregularities, not those which involve the substance of an approved project. Regarding the merits, the County contended the four projects clearly fell within the Act, as they were sufficiently tethered to an enumerated project. The circuit court ultimately concluded the thirty-day statute of limitations barred the Foundation's claims, and therefore did not reach the merits. The Foundation filed a direct appeal pursuant to Rule 203(d)(1)(A)(iii) and (iv), SCACR.

## ISSUE

Did the circuit court err in determining section 4-10-330(F)'s thirty-day limitations period barred this action?

## STANDARD OF REVIEW

When reviewing a circuit court's order from a motion for summary judgment, appellate courts sit in the same position as the circuit court. *Turner v. Milliman,* 392 S.C. 116, 121-22, 708 S.E.2d 766, 769 (2011). When the parties file cross-motions for summary judgment, the issue becomes a question of law for the Court to decide de novo. *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011). Additionally, the interpretation of a statute is a question of law for the Court to review de novo. *DomainsNewMedia.com, LLC v. Hilton Head Island-Bluffton Chamber of Commerce*, 423 S.C. 295, 300, 814 S.E.2d 513, 516 (2018).

## DISCUSSION

The Foundation contends the thirty-day limitations period set forth in section 4-10-330(F) only applies to procedural challenges, such as a lawsuit asserting voting irregularities. Because the focus of the Foundation's lawsuit is on the substance of the referendum—whether the projects fall outside the scope of the Act—it argues the statute of limitations does not apply. Conversely, the County asserts section 4-

10-330(F) does not distinguish between procedural and substantive challenges. We agree with the County.

Section 4-10-330 of the South Carolina Code authorizes a county governing body to establish a commission that designates projects to be included on a referendum for the voters' consideration during an election. Specifically, the provision requires the ordinance set forth the purpose of the penny tax funds, which, "may include the following types of projects: (b) courthouses, administration buildings, civic centers, hospitals, emergency medical facilities, police stations, fire stations, jails, correctional facilities, detention facilities, libraries, coliseums, educational facilities under the direction of an area commission for technical education, or any combination of these projects[.]" S.C. Code Ann. § 4-10-330(A)(1)(b). Additionally, section 4-10-330(E) requires in part, "The election commission shall conduct the referendum under the election laws of this State, mutatis mutandis,[1] and shall certify the result no later than November thirtieth to the county governing body and to the Department of Revenue." In this appeal, we are required to determine the import of section 4-10-330(F), which states,

> Upon receipt of the returns of the referendum, the county governing body must, by resolution, declare the results thereof. In such event, the results of the referendum, as declared by resolution of the county governing body, are not open to question except by a suit or proceeding instituted within thirty days from the date such resolution is adopted.

Specifically, the key language set forth in this provision is "*the results of the referendum. . . .*" *Id.* (emphasis added).

The primary rule of statutory construction is to ascertain the intent of the General Assembly. *Amisub of S.C., Inc. v. S.C. Dep't of Health & Envtl. Control*, 407 S.C. 583, 597, 757 S.E.2d 408, 416 (2014). "Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011). Accordingly, courts will "give words their plain and ordinary meaning without resort

---

[1] Black's Law Dictionary provides, "mutatis mutandis: All necessary changes having been made; with the necessary changes <what was said regarding the first contract applies *mutatis mutandis* to all later ones>." *Mutatis Mutandis, Black's Law Dictionary* (11th ed. 2019).

to subtle or forced construction to limit or expand the statute's operation." *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010) (citation omitted).

To begin, section 4-10-330(F) does not contain any express language limiting "the results of the referendum" to only procedural aspects, such as the vote count. While the Foundation contends the plain language of the phrase inherently creates this distinction, especially when viewed in comparison to the preceding subsection which describes election procedure, we disagree. It is not the province of this Court to engraft an additional provision onto a statute which is ostensibly clear on its face. *State v. Cty. of Florence*, 406 S.C. 169, 180, 749 S.E.2d 516, 522 (2013) (declining to "augment the statutory language" to include a requirement that is not contained in the statute at issue); *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 540, 725 S.E.2d 693, 698 (2012) (noting "when a statute is clear on its face, it is 'improvident to judicially engraft extra requirements to legislation'"). Further, when we look outside of subsection 4-10-330(F), the rest of the provision addresses the substance of the referendum, as demonstrated by the title of section 4-10-330, delineated as, "Contents of ballot question; purpose for which proceeds of tax to be used." *See S.C. Energy Users Comm. v. S.C. Elec. & Gas*, 410 S.C. 348, 357 n.5, 764 S.E.2d 913, 917 n.5 (2014) ("This Court may, of course, consider the title or caption of an act in determining the intent of the Legislature.") (citation omitted). Therefore, it would be entirely inconsistent for the limitations period to only apply to the vote count when section 4-10-330 addresses which projects are authorized to receive penny tax funds.

In addition to the absence of any qualifying language limiting the thirty-day limitations period to only procedural challenges, we find further support in our jurisprudence involving other abbreviated statutes of limitations. In *Hite v. Town of West Columbia*, landowners challenged the town's annexation of property, contending the town did not satisfy the statutory requirement to obtain a petition signed by a majority of the property owners whose property was subject to the annexation. 220 S.C. 59, 63, 66 S.E.3d 427, 428 (1951). The provision at issue required any lawsuit to be commenced within ninety days from when the results were published. Despite filing suit approximately five months after the annexation, the landowners argued the limitations period only applied to the results of the election, rather than all the requirements for a valid annexation. *Id.* at 64, 66 S.E.2d at 429. The Court disagreed, rejecting the landowners' interpretation as "too technical." *Id.* Instead, the Court held the limitations period was not confined to a challenge over the "casting and counting of ballots," but instead to the entire annexation process. *Id.* at 65, 66 S.E.2d at 429.

Similarly, in *Morgan*, the Court upheld a thirty-day statute of limitations concerning a challenge to a county's decision to obtain bonds after approval from the voters. *Morgan v. Feagin*, 230 S.C. 315, 319, 95 S.E.2d 621, 623 (1956). The Court noted,

> Similar short statutes of limitation, applicable to actions which question the proceedings upon the issuance of municipal and other bonds have been of force in this State for many years, apparently without challenge heretofore. Code of 1952, Sec. 1–645, twenty days; Sec. 21–976, thirty days; and Sec. 47–842, thirty days. The practical necessity of them is obvious. Purchasers of bonds could hardly be found if the bonds were subject in their hands to attack for alleged illegality in the proceedings upon the issuance of them. Furthermore, it is within common knowledge that sales of bonds are frequently timed to take advantage of a favorable market, which might well be hindered by long delay.

*Id.* at 317, 95 S.E.2d at 622. Further, the Court relied on *Hite*, noting the wisdom of such a short limitations period was not for the courts to determine but instead was a matter for the General Assembly. *Id.* at 319, 95 S.E.2d at 623.

Finally, in *State ex rel. Condon v. City of Columbia*, the State filed a lawsuit challenging the city's annexation of state-owned land. 339 S.C. 8, 12, 528 S.E.2d 408, 410 (2000). The circuit court held that because the State failed to file its lawsuit within the ninety-day limitations period, it was barred by the statute of limitations. *Id.* at 13, 528 S.E.2d at 410. On appeal, the Court agreed, noting the limitations period applied to the State, and that limitation "statutes are designed to promote justice by forcing parties to pursue a case in a timely manner." *Id.* at 19, 528 S.E.2d at 413.

While these cases did not invoke section 4-10-330(F), the same principles apply and further buttress our conclusion that the provision does not distinguish between procedural and substantive challenges. For example, section 4-10-310 contemplates that penny tax revenue "may be used to defray debt service on bonds issued to pay for projects authorized in this article." S.C. Code Ann. § 4-10-310 (2019). As the Court explained in *Hite*, a longer delay may frustrate the effectiveness of obtaining favorable bonds. Therefore, it is entirely consistent for the General Assembly to enact a statute containing a short limitations period that is

not limited to only challenges over the "casting and counting of ballots."[2] *Hite*, 220 S.C. at 65, 66 S.E.2d at 429. Regardless, any dispute over the length of the limitations period is beyond the purview of this Court and instead is a matter best left to the General Assembly.

Because we find the limitations period applies to this lawsuit, we now turn to the facts of this case. It is undisputed the county adopted a resolution on November 26, 2018, declaring the election results, meaning the thirty-day period expired in late December 2018. The Foundation did not file this lawsuit until April of 2019, nearly four months after the time period expired. Despite the Foundation's attempt to characterize this lawsuit otherwise, the result of the referendum is that a majority of voters agreed that the County should impose a penny tax to fund the fifteen items listed on the ballot. The Foundation's concern regarding four of the projects is a direct challenge to the results of the referendum—that a majority of voters cast their ballot in favor of funding the listed projects. Therefore, this lawsuit focuses on "the results of the referendum," and thus, is barred by section 4-10-330(F).

## CONCLUSION

We hold the circuit court correctly determined that section 4-10-330(F)'s thirty-day limitations period applies. Accordingly, because the Foundation filed this lawsuit outside the limitations period, it is time-barred.[3]

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**

---

[2] We note there has never been any allegation of deceit or nefarious conduct in this case, and we see absolutely no evidence of this in the record. Accordingly, equitable doctrines that may apply to suspend or toll a statute of limitations in certain cases, such as estoppel or equitable tolling, have no import here.

[3] We express no opinion as to whether the four projects are authorized under section 4-10-330(A)(1).